**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ———————————————————— x | |
| Corey Klar, individually and on behalf of all others similarly situated, : : | |
| : | Case No. |
| Plaintiff, : | |
| v. : | |
| : | |
| : | |
| Sendayco, LLC d/b/a Pure Body Naturals, : | **CLASS ACTION COMPLAINT** |
| : | |
| Defendant. : | <u>**JURY TRIAL DEMANDED**</u> |
| : | |
| : | |
| : | |
| ———————————————————— x | |

Plaintiff, Corey Klar (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of Sendayco, LLC d/b/a Pure Body Naturals, LLC (hereinafter "Defendant") with respect to the marketing and sales of Defendant's Pure Body Naturals products throughout the state of New York and throughout the country.  The Pure Body Naturals products include the following products (hereinafter the "Products"):

- Pure Body Naturals Restore & Strengthen Shampoo;

- Pure Body Naturals Tea Tree Body Wash;

- Pure Body Naturals Maximum Strength Hot Cream;

1

- Pure Body Naturals Hot Cream;

- Pure Body Naturals 100% Natural Tea Tree Oil Body & Foot Scrub;

- Pure Body Naturals Himalayan Pink Salt Scrub;

- Pure Body Naturals Tea Tree Oil Foot & Bath Soak;

- Pure Body Naturals Superfruit Smoothie Scrub;

- Pure Body Naturals Coconut & Hibiscus Dead Sea Salt Relaxing & Detoxifying;

- Pure Body Naturals Recovery Ritual Sitz Bath Salt;

- Pure Body Naturals Coconut Oil Deep Repair Hair Mask;

- Pure Body Naturals Pure Gloss Argan Oil Hair Mask;

- Pure Body Naturals Moroccan Argan Oil Shampoo;

- Pure Body Naturals Hair Styling Gel;

- Pure Body Naturals Beard & Stache Balm;

- Pure Body Naturals Beard & Stache Oil;

- Pure Body Naturals Pure Brightness Eye Gel;

- Pure Body Naturals Pure Longevity Retinol Moisturizer;

- Pure Body Naturals Pure Longevity Retinol Serum;

- Pure Body Naturals Brillance C Face Serum;

- Pure Body Naturals Pure Radiance Hyaluronic Acid Serum;

- Pure Body Naturals Dead Sea Mask For Face and Body;

- Pure Body Naturals Activated Charcoal Mask For Face & Body;

- Pure Body Naturals Dead Sea Mud Mask.

2.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure;" however, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain non-natural, synthetic ingredients.

3.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products based upon their "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure " representation.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.     Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach its warranties regarding the Products.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.     Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."  The Products' labeling is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Pure Body Naturals Restore & Strengthen Shampoo**



**Synthetic Ingredients:**

Decyl Glucoside
Cocamidopropyl Betaine
Tocopherol
Nicotine Acid (Niacin)
Phenoxyethanol
Ethylhexylglycerin
Citric Acid

**Pure Body Naturals Tea Tree Body Wash**



**Synthetic Ingredients:**

Tocopherol (Vitamin E)

**Pure Body Naturals Maximum Strength Hot Cream**



**Synthetic Ingredients:**

Glycerin
Alcohol
Phenoxyethanol
Carbomer
Tetrasodium EDTA



**Synthetic Ingredients:**

Glycerin
Alcohol
Phenoxyethanol
Tetrasodium EDTA

**Pure Body Naturals 100% Natural Tea Tree Oil Body & Foot Scrub**



**Synthetic Ingredients:**

Sodium Bicarbonate

**Pure Body Naturals Himalayan Pink Salt Scrub**



**Synthetic Ingredients:**

Sodium Chloride
Glycerin
Tocopherol (Vitamin E)

**Pure Body Naturals Tea Tree Oil Foot & Bath Soak**



**Synthetic Ingredients:**

Sodium Bicarbonate

**Pure Body Naturals Superfruit Smoothie Scrub**



**Synthetic Ingredients:**

Tocopherol (Vitamin E)
Phenoxyethanol
Ethylhexylglycerin

**Pure Body Naturals Coconut & Hibiscus Dead Sea Salt Relaxing & Detoxifying**



**Synthetic Ingredients:**

Sodium Bicarbonate

**Pure Body Naturals Recovery Ritual Sitz Bath Salt**



**Synthetic Ingredients:**

Glycerin

**Pure Body Naturals Coconut Oil Deep Repair Hair Mask**



**Synthetic Ingredients:**

Glycerin

**Pure Body Naturals Pure Gloss Argan Oil Hair Mask**



**Synthetic Ingredients:**

Glycerine

**Pure Body Naturals Moroccan Argan Oil Shampoo**



**Synthetic Ingredients:**

Cocamidopropyl Betaine

**Pure Body Naturals Hair Styling Gel**



**Synthetic Ingredients:**

Phenoxyethanol
Panthenol
Glycerin
Carbomer
Tetrasodium EDTA
Citric Acid

**Pure Body Naturals Beard & Stache Balm**



**Synthetic Ingredients:**

Glycerin

**Pure Body Naturals Beard & Stache Oil**



**Synthetic Ingredients:**

Glycerin

**Pure Body Naturals Pure Brightness Eye Gel**



**Synthetic Ingredients:**

Glycerin (Vegetable)
Tocopheryl Acetate
Hydroxyethyl Ethylcellulose
Potassium Sorbate
Sodium Benzoate
Carbomer
Butylene Glycol
Polysorbate 20
Ethylhexylglycerin

**Pure Body Naturals Pure Longevity Retinol Moisturizer**



**Synthetic Ingredients:**

Polysorbate 20
Tocopherol (Vitamin E)
Glyceryl Stearate
Cetyl Alcohol
Stearic Acid
Kosher Vegetable Glycerin
Panthenol
Phenoxyethanol
Ethylhexylglycerin
Xanthan Gum
Citric Acid

**Pure Body Naturals Pure Longevity Retinol Serum**



**Synthetic Ingredients:**

Glyceryl Stearate
Cetyl Alcohol
Stearic Acid
Glycerin (Vegetable)
Tocopheryl Acetate
Panthenol
Xanthan Gum
Polysorbate 20
Alcohol
Phenoxyethanol
Ethylhexylglycerin

**Pure Body Naturals Brillance C Face Serum**



**Synthetic Ingredients:**

d-Alpha Tocopheryl Acetate
Carbomer
Kosher Vegetable Glycerin
Phenoxyethanol
Ethyl Hexyl Glycerin

**Pure Body Naturals Pure Radiance Hyaluronic Acid Serum**



**Synthetic Ingredients:**

Glycerin (Vegetable)
Tocopheryl Acetate (Vitamin E)
Hydroxyethyl Ethylcellulose
Sodium Benzoate
Potassium Sorbate
Ethylhexylglycerin

**Pure Body Naturals Dead Sea Mask For Face and Body**



**Synthetic Ingredients:**

Vegetable Glycerin
Dimethicone
Caprylic/Capric Triglyceride
Tocopheryl Acetate (Vitamin E)
Xanthan Gum

**Pure Body Naturals Activated Charcoal Mask For Face & Body**



**Synthetic Ingredients:**

Organic Alcohol
Glycerin
Xanthan Gum

**Pure Body Naturals Dead Sea Mud Mask**



**Synthetic Ingredients:**

Glycerin
Ethylhexylglycerin
Xanthan Gum
Citric Acid
Cetearyl Alcohol
Phenoxyethanol
Benzoic Acid

7.     Defendant's representations that the Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure," are false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

  a.  **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance.  While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger.*

  b.  **Cetearyl Alcohol/Cetyl Alcohol** is a synthetic flavoring substance and adjuvant. *See* 21 C.F.R. §172.515.

  c.  **Tocopheryl Acetate** is a synthetic, inert ingredient used pre- and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest.  *See* 40 C.F.R. §180.910.

  d.  **Xanthan Gum** is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol.  It is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages and as emulsifiers in salad dressings. *See* 7 C.F.R. § 205.605(b).  A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[2]

---

[2] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan Gum-Containing Thickening Agent*, 161 THE JOURNAL OF PEDIATRICS 2, 354 (2012).

e. **Benzoic Acid** is synthetic. It is manufactured by treating molten phthalic anhydride with steam in the presence of a zinc oxide catalyst, by the hydrolysis of benzotrichloride, or by the oxidation of toluene with nitric acid or sodium bichromate or with air in the presence of a transition metal salt catalyst. *See* 21 C.F.R. § 184.1021.

f. **Alcohol** is any organic compound containing the hydroxy (-OH) functional group except those in which the OH group is attached to an aromatic ring, which are called *phenols.* Alcohols are classified as *primary, secondary,* or *tertiary* according to whether the carbon atom to which the OH group is attached is bonded to one, two, or three other carbon atoms and as *monohydric, dihydric,* or *trihydric* according to whether they contain one, two, or three OH groups; the latter two are called *diols* and *triols,* respectively.[3]

g. **Dimethicone**[4] is listed under 21 C.F.R. § 347.10 "Drugs for Human Use" as a skin protectant active ingredient. It is a polydimethylsiloxane obtained by hydrolysis and polycondensation of dichlorodimethylsilane and chlorotrimethylsilane.

h. **Caprylic/Capric Triglyceride** is the chemical name for octanoic acid. It is commercially prepared by oxidation of *n* -octanol or by fermentation and

---

[3] https://medical-dictionary.thefreedictionary.com/Alcohol

[4] The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints against companies that have used these ingredients in products promoted as natural. **Attachment A.**

fractional distillation of the volatile fatty acids present in coconut oil.  *See* 21

C.F.R. §184.1025.

i.  **Cocamidopropyl Betaine** is a synthetic surfactant.[5]

j.  **Sodium benzoate** is a synthetic preservative.[6]  Sodium benzoate is produced by

the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic

acid to a hot concentrated solution of sodium carbonate until effervescence

ceases.  The solution is then evaporated, cooled, and allowed to crystalize or

evaporate to dryness, and then granulated.  It does not occur naturally.[7]  Sodium

benzoate has been shown to cause DNA damage and chromosomal aberrations.[8]

When sodium benzoate combines with ascorbic acid (an ingredient common in

many food products) the two substances can react to produce benzene, which is a

highly toxic carcinogen.

k.  **Potassium Sorbate** is a synthetic preservative.[9]  *See* 21 C.F.R. § 582.3640.  It is

created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H8O2).

The resulting potassium sorbate may be crystallized from aqueous ethanol.

Studies have shown Potassium Sorbate to have genotoxic effects on humans and

---

[5]http://www.fda.gov/downloads/CombinationProducts/JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/UCM113805.pdf
[6] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/;
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[7] 21 C.F.R. § 184.1733.
[8] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).
[9] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.

other mammals.[10]  It causes chromosomal aberrations in cells, which can trigger the development of cancer.[11]

**l.** **Tetrasodium EDTA** is a synthetic additive. *See* 21 C.F.R. §173.310.  This ingredient is produced synthetically for industrial purposes in the laboratory.  It is a preservative made from the known carcinogen formaldehyde and sodium cyanide.  It is a penetration enhancer, meaning it breaks down the skin's protective barrier, going directly into the bloodstream.

**m.** **Hydroxyethylcellulose** is a water insoluble film which consists of the base sheet manufactured by the ethoxylation of cellulose under controlled conditions.  It is a synthetic.  *See* 21 C.F.R. § 177.1400.

**n.** **Carbomer**, also known as polyacrylic acid is a synthetic high-molecular weight polymer of acrylic acid.[12]  It is produced by polymerization of acrylic acid to form high-molecular weight, cross-linked polymers of acrylic acid.[13]  While not harmful to humans, carbomer is a microplastic that is harmful to oceans and is created by a manufacturing process that causes impurities.[14]

**o.** **Stearic Acid (Glyceryl Stearate)** is a mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, and glyceryl esters of fatty acids present in

---

[10] Sevcan Mamur et al., *Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?*, TOXICOLOGY IN VITRO 790, 793 (2010).
[11] *Id.*
[12] https://www.chemsrc.com/en/cas/9003-01-4_453957.html
[13] https://www.makingcosmetics.com/Carbomer-940_p_305.html
[14] https://incibeauty.com/en/ingredients/13165-carbomer

commercial stearic acid. It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b).

**p.** **Panthenol** is a synthetic compound, produced by adding propanolamine to optically active alpha, gamma-dihydroxy-beta,beta-dimethylbutyrolacton, such as by combining 3-amino-1-propanolamine with the lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid or the panthotheinc lactone of 2,4-dihydroxy-3,3-dimethyl butyric acid.

**q.** **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent. *See* 21 C.F.R. § 178.3400.

**r.** **Butylene Glycol** is a synthetic prepared by the aldol condensation of acetaldehyde followed by catalytic hydrogenation. *See* 21 C.F.R. §172.712.

**s.** **Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose.[15]

**t.** **Niacin** (C6H5NO2, CAS Reg. No. 59-67-6) is the chemical 3-pyridinecarboxylic acid (nicotinic acid). It is a non-hygroscopic, stable, white, crystalline solid that sublimes without decomposition at about 230 deg. C. It is soluble in water and alcohol. It is insoluble in ether. 21CFR § 184.1530. Niacin is synthetic.

**u.** **Sodium Bicarbonate** (NaHCO3, CAS Reg. No. 144-55-8) is prepared by treating a sodium carbonate or a sodium carbonate and sodium bicarbonate solution with carbon dioxide. As carbon dioxide is absorbed, a suspension of sodium

---

[15] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

bicarbonate forms.  The slurry is filtered, forming a cake which is washed and dried.  *See* 21 C.F.R. § 184.1736. Sodium bicarbonate is synthetic.

**v.  Sodium Chloride** is a synthetic and hazardous chemical substance.[16]

**w.  Phenoxyethanol** is toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses.  Even short exposure could cause serious temporary or residual injury.  It is toxic to the kidneys, the nervous system, and the liver.  It is extremely hazardous in case of eye contact and very hazardous in case of skin contact (defatting the skin and adversely affecting the central nervous system and peripheral nervous system, causing headaches, tremors, and central nervous system depression).  It is also very hazardous in case of ingestion or inhalation.  It degrades into substances that are even more toxic.  It is a category 2 germ cell mutagen, meaning that it is suspected of mutating human cells in a way that can be transmitted to children conceived after exposure.  Phenoxyethanol is an ethylene glycol ether, which is known to cause wasting of the testicles, reproductive changes, infertility, and changes to kidney function.  Phenoxyethanol is also category 2 carcinogen, meaning that it is suspected to induce cancer or increase its incidence.

**x.  Ethylhexylglycerin** is a synthetic derived, in part, from vegetable glycerin.  (See Below).

---

[16] https://whatsinproducts.com/files/brands_pdf/1391295214.pdf

**y. Glycerin** is a factory-produced texturizer that is created by complex processing. It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b). It is commonly used as a filler and thickening agent. It requires multiple processing steps in an industrial environment to create glycerin, and therefore it cannot be described as "natural." A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing glycerin, each of which involve numerous steps that include the use of high temperatures, pressure, and purification to get an end product.

| Processes for producing glycerin by hydrolysis of fats and oils[1] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean, and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a |

---

[1] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
|---|---|
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High-Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

8.      Whether Defendant's labeling of the Products as natural is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.      In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural (as opposed to synthetic) if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or

biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. **(Attachment B).**

10. Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

11. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

12. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. This is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand (nor are they expected to understand) that these ingredients are synthetic.

13. Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."

14.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" claims to mean that the Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" and do not contain synthetic ingredients.

15.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

16.     Consumers rely on label representations and information in making purchasing decisions.

17.     The marketing of the Products as "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" in a prominent location on the label of the Products, throughout the Class Period, evidences Defendant's awareness that "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" claims are material to consumers.

18.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

19.     Plaintiff and the Class Members reasonably relied, to their detriment, on Defendant's misleading representations and omissions.

20.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

21.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as being "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" over comparable products not so labeled.

22.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

    a.     Paid a sum of money for Products that were not what Defendant represented;

    b.     Paid a premium price for Products that were not what Defendant represented;

    c.     Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

    d.     Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

23.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased.

24.     Plaintiff and the Class Members paid for Products that are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" but received Products that are not "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."  The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

25.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 Class Members; (2) Plaintiff is a citizen of the state of New York, Defendant Sendayco, LLC d/b/a Pure Body Naturals is a citizen of the state of Ohio; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

28.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased the Products during the Class Period.  The packaging of the Products Plaintiff purchased contained the representation that it is "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."  Plaintiff believes that products that are labeled as "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" do not contain synthetic ingredients.  Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.  If the Products actually were "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure," as represented on the Products' labels, Plaintiff would purchase the Products in the immediate future.

30.     Had Defendant not made the false, misleading, and deceptive representation that the Products were "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure," Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for the Products than he would have had he known the truth about the Products.  The

Products Plaintiff received were worth less than the Products for which he paid. Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

31.     Defendant, Sendayco, LLC d/b/a Pure Body Naturals is a corporation with its principal place of business in Dayton, Ohio. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

<u>**CLASS ALLEGATIONS**</u>

32.     Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

33.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

34.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

35.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

36.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.  Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public; and

e.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

39.     Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

40.     Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41.     Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

42.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

> a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive (if not totally impossible) to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."

43. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

44. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

45. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

46. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

47. There is no adequate remedy at law.

48. Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

49. Defendant's improper consumer-oriented conduct (including labeling and advertising the Products as being "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure") is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the

46

Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

50. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were (contrary to Defendant's representations) not "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

51. Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

52. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

56. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

57. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

59. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

60. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."

61. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were (contrary to Defendant's representations) not "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

62. Defendant's advertising, packaging, and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

63. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

65.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

66.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

67.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure."

70.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

71. These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

72. Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

73. Within a reasonable time after he knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach by mailing Defendant a pre-suit letter on March 29, 2022, giving Defendant an opportunity to cure their breach, which they refused to do.

74. Defendant thereby breached the following state warranty laws:

   a. Code of Ala. § 7-2-313;

   b. Alaska Stat. § 45.02.313;

   c. A.R.S. § 47-2313;

   d. A.C.A. § 4-2-313;

   e. Cal. Comm. Code § 2313;

   f. Colo. Rev. Stat. § 4-2-313;

   g. Conn. Gen. Stat. § 42a-2-313;

   h. 6 Del. C. § 2-313;

   i. D.C. Code § 28:2-313;

   j. Fla. Stat. § 672.313;

   k. O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t.    Md. Commercial Law Code Ann. § 2-313;

u.    106 Mass. Gen. Laws Ann. § 2-313;

v.    M.C.L.S. § 440.2313;

w.    Minn. Stat. § 336.2-313;

x.    Miss. Code Ann. § 75-2-313;

y.    R.S. Mo. § 400.2-313;

z.    Mont. Code Anno. § 30-2-313;

aa.    Neb. Rev. Stat. § 2-313;

bb.    Nev. Rev. Stat. Ann. § 104.2313;

cc.    R.S.A. 382-A:2-313;

dd.    N.J. Stat. Ann. § 12A:2-313;

ee.    N.M. Stat. Ann. § 55-2-313;

ff.    N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313; and

xx.     Wyo. Stat. § 34.1-2-313.

75.     Defendant breached the express warranty because the Products are not "Pure" and/or "100% Natural" and/or "Natural" and/or "100% Pure" because they contain synthetic ingredients.

76.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Enjoining Defendant from continuing its unlawful practices described herein;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated:  February 3, 2023

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*